## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TODD COOKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. CIV-11-1288-D** |
| ) | |
| **JOHN WHETSEL,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff, an Oklahoma state prisoner proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at the Oklahoma County Detention Center ("OCDC").  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Service of process and a special report from the officials responsible for OCDC were ordered.  Doc. 8.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  After the report was filed, Defendant Whetsel moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Docs. 20, 21.  Plaintiff has filed his response to Defendant Whetsel's motion to dismiss, Doc. 41, and the matter is now at issue.  Also pending for disposition are Plaintiff's motions for leave to amend his complaint, Doc. 34, and for a preliminary injunction.  Doc. 29.

For the reasons set forth below, the undersigned recommends that Defendant Whetsel's motion to dismiss (converted to a motion for summary judgment for purposes of evaluating Defendant Whetsel's failure-to-exhaust defense) be granted, Defendant Whetsel's motion to dismiss be granted, and that Plaintiff's claims against Defendant Whetsel be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which § 1983 relief may be granted.  The undersigned also recommends that all pending motions be denied.

## I.    Background.

For approximately 9 days of his 62-day his confinement at OCDC, Plaintiff was a pretrial detainee; for the balance, he was a convicted felon.  Doc. 20-1, at 3-13; Doc. 33-1, at 2.[1]  Plaintiff's first set of issues center around the cleanliness of the OCDC's facilities and inmate hygiene.  He contends that (1) he and his fellow inmates are often compelled to go without bathroom facilities, forcing them to urinate on the cell floors; (2) the cells are unkempt; (3) he lacks the proper cleaning materials to keep his cell clean, (4) he is unable to shower at regular intervals, and (5) when he can bathe, he must do so in moldy and grimy

---

[1]    Plaintiff was transferred from OCDC on November 23, 2011.  Doc. 20-14.  To the extent that Plaintiff seeks injunctive relief, his claims are moot. *Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (holding that release from prison moots an inmate's claims for declaratory and injunctive relief, because judgement in Plaintiff's favor "would have no effect on the defendants' behavior").

showers.  Doc. 1, at 3.  He also complains that (6) OCDC is pest-ridden and (7) correctional officers deliver and retrieve inmates' food trays using their boots. *Id.* at 3-4.

He also argues that (8) his cell is more crowded than that of other inmates, and as a result, (9) his clothes (and those of his fellow pod-mates) are laundered less frequently, and when they are laundered, they remain stained.  *Id.* at 3.

He next (10) targets the adequacy of the center's legal research facilities, arguing that he must complete a "request to staff" before he may obtain research materials.  *Id.* at 4-5.  Finally, (11) he appears to challenge OCDC's grievance system's internal routing, which directs grievances to the person who retains the authority to take corrective action.  *Id.* at 5.  In all, he seeks $2.4 million in damages and injunctive relief.  Doc. 1, at 5.

## II.  Analysis.

### A.  Standard of review.

The parties' briefs, specifically Defendant Whetsel's motion to dismiss and Plaintiff's response, rely upon documents not attached to or incorporated in the complaint when examining Plaintiff's exhaustion of administrative remedies. Docs. 21, 41.  "A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'" *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384

(10th Cir. 1997).  Typically, if the court decides to convert a Rule 12(b) motion into a Rule 56 motion, it must provide parties with notice to avoid unfair surprise.  *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986).  However, "when a party [references] material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion." *Wheeler v. Main Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) (citation omitted).  Defendant Whetsel relies on the court-ordered *Martinez* report so that he might argue failure to exhaust OCDC's grievance process.  Doc. 20.  Because both parties have attached such documents they are already on notice that the court may treat the motion to dismiss as a motion for summary judgment with respect to these claims even without giving formal notice of conversion.  *Id.*

In the context a summary judgment, judgment for the movant shall be granted where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) .  In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party.  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted).  A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id.*

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the initial burden of indicating the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Id.* "If the movant meets this initial burden, the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (quoting Fed. R. Civ. P. 56(e) (2007 version)).

Additionally, when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). In this same vein, the rules of this Court provide in part that "[a]ll material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR56.1(c).

A motion to dismiss may be granted when the plaintiff has "failed to state

a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). In reviewing the sufficiency of the complaint, the court presumes all of the plaintiff's factual allegations to be true and construes them in the light most favorable to the plaintiff. *Id*. A pro se plaintiff's complaint must be broadly construed under this standard. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "broad reading" of pro se complaints dictated by Haines "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

Additionally, the responsibility of the court in considering a civil complaint filed by a prisoner who, like Plaintiff, is allowed to proceed in forma pauperis in accordance with 28 U.S.C. §1915(b)(1) is to determine as soon as possible if the cause of action is frivolous, malicious, fails to state a claim upon which relief may be granted, or if the prisoner seeks monetary relief from a defendant who is immune from such a claim. 28 U.S.C. §§ 1915A, 1915(e)(2)(B). *See Phillips*

6

*v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981).  Pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the court must dismiss a cause of action filed in forma pauperis at any time the court determines one of the above is present.  An action "is frivolous when it lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The same standard applies under 28 U.S.C. §1915A when a cause of action is filed by a prisoner against a governmental entity or officer or employee of a governmental entity.  The term "frivolous" includes both the "inarguable legal conclusion" and the "fanciful factual allegation."  *Hall*, 933 F.2d at 1108 (citing *Neitzke*, 490 U.S. at 325).  The "standard for dismissal for failure to state a claim is essentially the same under" both Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. §1915(e)(2)(B)(ii).  *Curley v. Perry*, 246 F.3d 1278, 1283 (10th Cir. 2001).

Finally, this court liberally construes a pro se plaintiff's pleadings. *Haines*, 404 U.S. at 520.  But "'[t]he burden remains on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he . . . is entitled to relief.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting *Bell v. Twombly*, 550 U.S. 544 (2007)).

## B.    Exhaustion of administrative remedies.

The Prison Litigation Reform Act ("PLRA") states in relevant part: "No action shall be brought with respect to prison conditions under section

1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In construing this legislation, the United States Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* at 218; *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure.") (citation omitted). So, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies. The doctrine of substantial compliance does not apply." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (citation, quotations, and brackets omitted). "The statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [i]s not authorized to dispense with it." *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) (per curiam). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for

failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002).

Defendant Whetsel's motion to dismiss argues that Plaintiff has failed to exhaust his administrative remedies as to the unclean shower claim, the pest control claim, and the improper laundering claim (claims (5), (6), and (9)). Doc. 21, at 6-9. In opposition to Defendant Whetsel's motion, Plaintiff presents evidence that he submitted numerous grievances and requests to staff. Doc. 41, at 11-13. He also argues that no appeal forms were available to him and that responses to grievances were untimely, hindering his ability to complete the administrative process. *Id.* at 7-8.

OCDC's policy statement 4080.00 specifies a multi-step grievance procedure. *See* Doc. 20-11, at 6-17. At Step 1, the inmate makes an oral complaint. *Id.* At Step 2, the inmate completes a "Request to Staff" within fifteen days of the incident and gives it to an OCDC employee to forward to the Unit Manager. *Id.* At Step 3, the inmate files a Formal Grievance within fifteen days of the incident or receipt of the Request to Staff response. *Id.* The grievance must detail the date of the incident, the nature of the complaint, the date of the Request to Staff and the requested remedy. *Id.* At Step 3, the inmate may appeal the grievance within ten days of the receipt of the formal grievance response. The Jail Administrator's response serves as the final

resolution.  *Id.*

As to the grimy shower claim (claim (5)), after an oral complaint, Plaintiff filed a grievance on October 23, 2011, and three days later, Plaintiff received a response.  Doc. 20-2. at 2-3 (Grievance No. 2011/1-0/24/001).  The reviewing authority denied the grievance, stating that the showers were then "scrubbed and cleaned."  *Id.*  Therefore, Plaintiff had ten days from October 26, 2011, to complete Step 3 of the grievance process.  The evidence before the court shows that Plaintiff never completed Step 3 of the grievance process as to Grievance No. 2011/1-0/24/001, nor does Plaintiff contend otherwise.  Therefore, Plaintiff has failed to exhaust his administrative remedies as to Grievance No. 2011/10/24/001.

As to the pest control claim (claim (6)), Defendant Whetsel contends that Plaintiff filed no grievance. Doc. 21, at 7.  Plaintiff cites no grievance form.  The evidence before the court shows that Plaintiff never completed Step 3 of the grievance process as to this claim, nor does Plaintiff contend otherwise. Therefore, Plaintiff has failed to exhaust his administrative remedies as to this claim.

Finally, as to the improper laundering claim (claim (9)), Plaintiff filed a grievance on October 23, 2011, Doc. 20-2, at 7-8 (Grievance No. 2011/10/24/003). Plaintiff received a response on October 26, 2011, in which the reviewing

authority denied the grievance.  *Id.*  Therefore, Plaintiff had ten days from October 26, 2011, to complete Step 3 of the grievance process.  The evidence before the court shows that Plaintiff never completed Step 3 of the grievance process as to Grievance No. 2011/1-0/24/003, nor does Plaintiff contend otherwise.  Therefore, Plaintiff has failed to exhaust his administrative remedies as to Grievance No. 2011/10/24/003.

To the extent Plaintiff argues administrative remedies were unavailable to him because no appeal forms were available to him, he concedes that he filed appeals using makeshift forms.  Doc. Doc. 41, Ex. 11, at 10.  The evidence before the court indicates no completion of Step 3 of the grievance process with makeshift or any type of form.  Plaintiff has failed to exhaust claims (5), (6), and (9) and this court recommends that Defendant Whetsel's motion for summary judgment be granted on these claims.

## C.    Defendant Whetsel's official and individual capacities.

Defendant Whetsel also moved to dismiss Plaintiff's complaint under Fed. R. Civ. P. 8 and 12(b)(6).  Doc. 21, at 2-4.  He contends that not only do Plaintiff's generalized allegations identify no actions by Defendant Whetsel, but also, that Plaintiff fails to allege facts specific to bring suit against Defendant Whetsel in either his individual or official capacity claims by him either.  *Id.* at 3-5. Specifically, Defendant Whetsel asserts that Plaintiff has made insufficient

allegations with regard to an official policy resulting in alleged violations, his personal participation or knowledge, the affirmative link required for supervisory liability, deliberate indifference, denial of access to the courts, and to actual injury. *Id.* at 3-4, 6-11. Defendant Whetsel also contends that to the extent Plaintiff raises issues concerning other inmates' alleged deprivations, Plaintiff lacks standing. *Id.* at 5.

### 1.   **Official capacity.**

A suit against a public official in his or her official capacity is, in reality, a suit against the governmental entity. *See Kentucky v. Graham*, 473 U.S. 159, 165(1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998). A plaintiff in an official capacity suit under § 1983 must prove that the entity's "policy or custom" played a role in the violation of federal law. *Kentucky*, 473 U.S. at 165. Because of this, the court applies the standard of liability to municipalities and counties in assessing whether Plaintiff's official capacity claim for failure to provide medical treatment survives the motion to dismiss. *See id.* at 165-66; *see also Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (noting that although *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009), clarified the standards for assessing supervisory liability, "[n]othing in *Iqbal* contradicts" the standards for municipal liability under § 1983). A municipality or county can be held accountable to a

12

pretrial detainee for a due process violation resulting from an employee's acts only if the harmful acts resulted from a policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights. *Monell*, 436 U.S. at 690-91, 694.

Here, Plaintiff fails to allege that a policy, custom, or practice of OCDC or the Sheriff's Department caused any of the alleged conditions at the OCDC or played any part in any of the alleged violations. Indeed, his complaint does not link any of the alleged violations to any policy, custom, or practice of any government entity or named official. Accordingly, Plaintiff failed to sufficiently allege a § 1983 cause of action against Defendant Whetsel in his official capacity.

## 2. Individual capacity.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997); *see also Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating that personal participation is an essential allegation in a § 1983 action). In an individual-capacity suit, "§ 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). The complaint must allege that the supervisor was personally involved. *See id.*

Under § 1983, government officials may not be held vicariously liable for the conduct of their subordinates.  *See Iqbal*, 556 U.S. at 675-76.  Supervisory liability will lie only "where an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  *Id.* (internal quotation marks omitted).  Plaintiff makes no assertion of an affirmative link.

Nor does he suggest that Defendant Whetsel personally participated in any of the alleged constitutional deprivations, foreclosing any action against Defendant Whetsel in his individual capacity.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

Plaintiff argues that Oklahoma law compels Defendant Whetsel to assume responsibility for his deputies' conduct and his jail's management.  Doc. 41, at 2-3.  While this is true, he avers no improper hiring, training, supervising, or disciplining of his deputies.  To the extent Plaintiff asserts naked respondeat superior liability, his claim is clearly deficient.  Supervisory liability here requires "deliberate indifference" to a known and excessive risk, and "even if a prison official has knowledge of a substantial risk of serious harm to inmates, he is not deliberately indifferent to that risk unless he is aware of and fails to take reasonable steps to alleviate that risk."  *Tafoya v. Salazar*, 516 F.3d 912, 916, 922 (10th Cir. 2008).  Plaintiff's response to the motion to dismiss establishes no

14

affirmative link nor suggests any deliberate indifference on Defendant Whetsel's part. Doc. 41, at 1-3. At bottom, as shown below, Plaintiff cannot show that *any* individual "actually committed a constitutional violation." *Fogarty*, 523 F.3d at 1162. For these reasons alone, the undersigned recommends that Plaintiff's claims against Defendant Whetsel be dismissed for failure to state a claim upon which relief may be granted in his official and individual capacities.

### D.     Standing.

Defendant Whetsel also contends that to the extent Plaintiff raises issues concerning other inmates' alleged deprivations, he lacks standing. To the extent that Plaintiff raises claims on behalf of others (as alleged in claims (1) no access to bathroom facilities and (9) infrequent and inadequate laundering), a review of the evidence before the court indicates he lacks standing to do so. To have standing, a state prisoner must state "specific facts connecting the allegedly unconstitutional conditions with his own experiences [in the prison], or indicat[e] how the conditions caused him injury." *Swoboda v. Dubach*, 992 F.2d 286, 289 (10th Cir. 1993). "[G]eneral observations" about prison conditions are not actionable under 42 U.S.C. § 1983. *Id.* at 289-90. Plaintiff's claims will be considered only to the extent they allege a violation of his constitutional rights.

### E.     Failure to state a claim.

Although the court finds that Plaintiff asserts no cognizable claim against

Defendant Whetsel, lacks standing as to claims (1) and (9), failed to exhaust administrative remedies as to claims (5), (6), and (9), the court also concludes that Plaintiff's claims should be dismissed for failure to state a claim concerning any alleged constitutional violations.

### 1. Hygiene and cleanliness of conditions claims (Claims (1) - (7)).

Plaintiff raises numerous general complaints about the conditions of his confinement at OCDC.  He alleges inadequate access to bathroom and shower facilities, unsanitary shower stalls, lack of cleaning supplies, insect-ridden facilities, overcrowding, and unsanitary food preparation and delivery.

The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney*, 143 F.3d at 1310.  To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component.  *See id.*

The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Although what constitutes cruel and unusual punishment under the Eighth Amendment "must

draw its meaning from the evolving standards of decency that mark the progress of a maturing society," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion)), the Constitution "does not mandate comfortable prisons," *id.* at 349.   To the contrary, jail conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney*, 143 F.3d at 1311 (quoting *Rhodes*, 452 U.S. at 347).   Indeed, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted).

The subjective component requires the jail official to have a "sufficiently culpable state of mind." *Id.* at 297.   In the context of prison-conditions claims, the required state of mind is one of "'deliberate indifference' to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (194) (quoting *Wilson*, 501 U.S. at 302-03).   In other words, the jailer is liable only if he or she "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.   "It is not enough to establish that the official should have known of the risk of harm." *Barney*, 143 F.3d at 1310.

17

Plaintiff's allegations are too conclusory to demonstrate either the objective or subjective components of a valid conditions of confinement claim. As the Tenth Circuit has stated, "[P]laintiff must do more than claim a foul. He must state with sufficient particularity what the foul involved, who was involved, and when and where it took place.  It is not sufficient to use legal jargon and bald conclusions." *Moore v. Trapp*, No. 90-7077, 1991 WL 65074, at *2 (10th Cir. April 24, 1991) (unpublished) (affirming the district court's dismissal of §1983 complaint alleging overcrowding, plumbing problems, no physical exercise, no lights, no personal sanitation, inadequate diet and lack of access to the courts); *Ramos v. Lamm*, 639 F.2d 559, 571-72 (10th Cir. 1980) (holding that as long as prisoners receive food that is prepared and served under conditions which do not present an "immediate danger to the health and well being of the inmates who consume it," control of an inmate's diet is within the sole discretion of jail authorities); *Robinson v. Gibson*, Nos. 98-7145, 98-7149, 98-7193, 99-7028 and 99-7030, 1999 WL 1009497 (10th Cir. Nov. 8, 1999) (unpublished) (dismissing prisoner's §1983 conditions of confinement claim alleging the roof leaked, portions of the ceiling were caving in, raw sewage flowed through the area, the electrical wiring was dangerous and the food was not hot and sometimes contained insects as such allegations were "vague and conclusory"); *Bell v. Midwest City Police Dep't*, No. 93-6045, 1993 WL 214563

(10th Cir. June 18, 1993) (unpublished) (holding that pretrial detainee's "allegation that he was denied a shower for an eight-day period, without more, fails to state a due process violation"); *see also Smith v. Romer*, No. 96-1211, 1997 WL 57093 (10th Cir. Feb. 11, 1997) (unpublished) (holding that prisoner's confinement to cell for 23 hours a day "does not necessarily amount to a constitutional violation"); *Reece v. Gragg*, 650 F. Supp. 1297, 1301 (D. Kan. 1986) (concluding that overcrowding amounts to punishment only when it "subjects a detainee over an extended period to genuine deprivations and hardship not reasonably related to a legitimate governmental objective"); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) (finding that short-term denial of "personal hygiene items," including toilet paper and mattresses does not "amount to a constitutional deprivation"); *Whitted v. Lazerson*, No. 96 Civ. 2746(AGS), 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (unpublished) ("The temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation."); *Odom v. Keane*, No. 95 Civ. 9941(SS), 1997 WL 576088, at *4-5 (S.D.N.Y. Sept.17, 1997) (unpublished) (finding that even the absence of a working toilet in one's prison cell for approximately ten hours, absent an allegation that the prisoner risked contamination by contact with human waste, "does not rise to the level of cruel and unusual punishment"). At

19

bottom, Plaintiff's bald allegations are insufficient to state a §1983 claim for relief.

Moreover, Plaintiff fails to allege that the deprivations he suffered were the result of either Defendant Whetsel's deliberate indifference to his safety or his intent to punish him.  There are no facts in the complaint to support an allegation that Defendant Whetsel had a sufficiently culpable state of mind and no facts that Defendant Whetsel completely disregarded or ignored Plaintiff's safety.  The court will not infer an improper motive on the part of Defendant Whetsel without some fact to support such an inference.  For these reasons, the undersigned recommends that Plaintiff's claim regarding the conditions of his confinement be dismissed for failure to state a claim upon which relief may be granted.  *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994) ("Absent allegations of 'deliberate indifference' by prison officials and of a 'specific deprivation' of a 'human need,' an Eighth Amendment claim based on prison conditions must fail.") (quoting *Wilson*, 501 U.S. at 303-05).

### 2.    Inadequate access to the courts.

### a.    Access to legal materials (Claim 10).

The Constitution guarantees "inmates the right to 'adequate, effective and meaningful' access to the courts." *Beville v. Ednie*, 74 F.3d 210, 212 (10th Cir. 1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)).  This right extends

only as far as protecting inmates' ability to "attack their sentences, directly or collaterally" and "to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). While the establishment of prison law libraries and legal assistance programs are acceptable methods of fulfilling this obligation, "*Bounds* did not create an abstract, free-standing right to a law library of legal assistance. . . ." *Id.* at 351. Thus, an inmate cannot establish a violation of his right of access to the courts merely by establishing that a prison law library or legal assistance program is inadequate in some respect. *Id.* Instead, to present a valid denial of access claim a plaintiff must show that he suffered "actual injury" due to the alleged unconstitutional deprivations. *Id.* Specifically, the plaintiff must demonstrate that the alleged shortcoming or shortcomings have hindered his efforts to pursue a nonfrivolous legal claim. *Id.*; *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) ("[A]n inmate must satisfy the standing requirement of 'actual injury' by showing that the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim.").

In this case, while Plaintiff alleges that the jail had no library and that other legal resources were inadequate, he makes no allegation that he suffered any injury as a result of those inadequacies. Specifically, he does not allege that the inadequacies prohibited him from pursuing a cause of action in this, or any other court. Accordingly, the undersigned recommends that Plaintiff's claim

premised on inadequate legal resources be dismissed for failure to state a claim upon which relief may be granted.

### b.      Mishandling of grievances (Claim 11).

Plaintiff's final and related allegation is that Defendant Whetsel mishandled his grievances and requests to staff by returning illegible responses, and by assigning the grievance to the department against whom Plaintiff lodged the complaint. Doc. 1, at 5-7. He alleges that these actions violated his "'Inmate Rights' as established in the Oklahoma County Detention Center Handbook." *Id.* at 6.

To start, the Tenth Circuit has held that "there is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 Fed. Appx. 331, 332 (10th Cir. 2011). "Nor does the state's voluntary provision of an administrative grievance process create a liberty interest in that process." *Id.* (citing *Bingham v. Thomas*, 654 F.3d 1171, 1177-78 (11th Cir. 2011)). That Plaintiff disputes OCDC's internal routing system states no constitutional claim and has resulted in no prejudice. Any alleged deprivation of the prison grievance process in no way implicated Plaintiff's right of access to the courts. Accordingly, the undersigned recommends that Plaintiff's claim premised on mishandling of grievances and violating OCDC's grievance policy be dismissed for failure to state a claim upon which relief may be granted.

### 3.    Plaintiff's Fourteenth Amendment claims (Claims 8-9).

Lastly, Plaintiff briefly alleges that Oklahoma Department of Corrections inmates are double-celled, and receive more frequent laundry changes, while he is triple-celled.  Doc. 1, at 3.[2]  Plaintiff has not shown that OCDC's different treatment of Department of Corrections inmates is not "reasonably related to some legitimate penological purpose," as he must.  *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  Merely asserting that OCDC contracts with and houses different inmates differently overcomes no "presumption of government rationality."  *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).  Accordingly, the undersigned recommends that Plaintiff's equal protection claim be dismissed for failure to state a claim upon which relief may be granted.

## IV.    Motion for leave to amend complaint.

After this court entered an order striking Plaintiff's amended complaint, Doc. 32, Plaintiff sought leave to file the amended complaint out of time.  Doc. 34.  Specifically, he seeks to add several parties and supplements his previous claims with additional factual allegations regarding the added defendants and his injuries.

In listing his reasons for his belated request, Plaintiff argues that he is

---

[2]    Liberally construing Plaintiffs's claims, as this court must, it construes Plaintiff's inadequate clothing laundering claim both as a conditions of confinement claim and an equal protection claim.

untrained in the law, and that his "allegations are close to stating a claim" but for "some important [missing] element." *Id.* at 2. While it is true that courts construe a pro se plaintiff's filings liberally, the Tenth Circuit "'has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). Plaintiff is correct that his complaint does not state a claim nor establish the violation of a constitutional right. Doc. 34, at 2. Plaintiff's complaint, even if amended as proposed, does not change that and would not save his claims from dismissal. Therefore, the undersigned recommends that the motion for leave to amend be denied.

## <u>RECOMMENDATION</u> <u>AND NOTICE OF RIGHT TO OBJECT</u>

For the reasons set forth above, the undersigned recommends that:

(1) Defendant Whetsel's motion to dismiss, Doc. 21, converted to a motion for summary judgment as to claims (5), (6), and (9), be granted and summary judgment entered on the complaint in favor of Defendant Whetsel because Plaintiff failed to exhaust those claims;

(2) Defendant Whetsel's motion to dismiss be granted for failure to state a claim upon which § 1983 relief may be granted and that Plaintiff's claims be dismissed pursuant to 28 U.S.C. § 1915(e)2)(B)(ii) for failure to state a claim

upon which relief may be granted.

(3) If the recommendation to dismiss Plaintiff's complaint is adopted, then Plaintiff's outstanding motion for a preliminary injunction, Doc. 33, should be denied as moot; and

(4) Plaintiff's motion for leave to amend complaint, Doc. 34, be denied.

The parties are advised of their right to object to this Report and Recommendation by March 14, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

IT IS SO ORDERED this 22nd day of February, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE